

**ORIGINAL**

1  KRISTINA S. HOLMAN
   Nevada Bar No.003742
2  4475 South Pecos Road
   Las Vegas, Nevada 89121
3  Tel: (702) 454-2111
   Fax: (702) 454-3333
4
   Attorney for Plaintiff,
5  TRACEY M. CASTANEDA

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

CV-S-04-0027-KJD-LRL

TRACEY M. CASTANEDA,

    Plaintiff,

vs.

CAESARS ENTERTAINMENT, INC., a Nevada Corporation d/b/a CASCATA GOLF COURSE; PARK PLACE ENTERTAINMENT CORP., a Nevada Corporation; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive;

    Defendants.

**PLAINTIFF'S COMPLAINT**
**(Jury Demanded)**

Plaintiff, Tracey M. Castaneda, by and through her attorney, Kristina S. Holman, complains and alleges as follows:

## JURISDICTION AND VENUE

1. This is a civil action for damages under a variety of state and federal statutes to secure Plaintiff's protection under and to redress deprivation of Plaintiff's rights under these laws. This suit is brought and jurisdiction lies pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 (hereinafter "ADA"), 42 U.S.C. § 12101, *et seq.*, which incorporates by reference § 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5, and the pendent jurisdiction of this Court.

///

1



ORIGINAL

2.      All conditions precedent to jurisdiction under § 706 of Title VII, 42 U.S.C. § 2000e-5(f)(3), have occurred or been complied with or will be complied with as herein described:

(a)     Plaintiff filed a formal "Charge of Discrimination" with the United States Equal Employment Opportunity Commission (EEOC) and with the Nevada Equal Rights Commission (NERC) on February 12, 2003, which is within 180 days of the commission of the unlawful employment practice alleged herein. (NERC Charge No. 0212-03-135L) and the EEOC (EEOC Charge No. 34BA300652). A copy of the formal charge is attached. (See Attached Exhibit 1).

(b)     On October 11, 2003, Plaintiff received a "right-to-sue" letter from the EEOC. Therefore, this Complaint will have been filed within 90 days of receipt of the EEOC's notification of right to sue.

3.      Venue is proper in the Federal District Court of Nevada pursuant to 28 U.S.C. § 1391(b) because the claimed tortious acts and/or unlawful employment practices were committed in and arose in the District of Nevada.

## THE PARTIES

4.      Plaintiff, Tracey M. Castaneda, during the relevant time period, was a citizen of the County of Clark, State of Nevada. At all times relevant hereto, Plaintiff was employed by Cascata Golf Course ("Cascata") which is owned and operated by Defendant Caesars Entertainment, Inc. ("Caesars") from December 4, 2000 through September 10, 2002 at which time Plaintiff's employment was terminated. Plaintiff is a "qualified individual with a disability" as that term is defined in § 101(8) of the ADA, 42 U.S.C. § 12102.

5.      Defendant Caesars is a corporation licensed to conduct business in Nevada with its office and principal place of business in Las Vegas, Nevada and is qualified to do business in the State of Nevada.

6.      Defendant Caesars is a "person" within the meaning of Section 101(7) of the ADA, 42 U.S.C. § 12111(7), and § 701(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(a).

7.      Defendant Caesars is engaged in an "industry affecting commerce" within the meaning of Section 101(7) of the ADA, 42 U.S.C. § 12111(7), and Section 701(h) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(h).

8. Defendant Caesars employs 15 or more employees and is an "employer" within the meaning of Section 101(5)(A) of the ADA, 42 U.S.C. § 12111(5)(A). As such an employer, Defendant Caesars is subject to Nevada and federal statutes prohibiting disability discrimination. N.R.S. § 613.330, *et seq.* and 42 U.S.C. § 12101 *et seq.*

9. Doe Defendants I-X, inclusive, are persons and Roe Corporation Defendants I-X, inclusive, are corporations or business entities whose true identities are unknown to Plaintiff at this time. Individual Doe Defendants are persons acting on behalf of or at the direction of any corporate or business Defendants or who may be officers, employees, or agents of Defendant Caesars and/or a Roe Corporation and acted to deprive Plaintiff of his rights. The Roe Corporations may be parent companies, subsidiary companies, owners, predecessor or successor entities, or business advisers, de facto partners, or joint venturers of Defendant Caesars. Plaintiff alleges that individual Does I-X and Roe Corporation Defendants I-X may have authorized, committed, directed, and/or assisted in the commission or ratified the commission of the unlawful discriminatory and/or tortious acts directed toward Plaintiff and thus, may be responsible in whole or in part, for his damages. Plaintiff will seek leave to amend this Complaint as soon as the true identities of Doe/Roe Defendants are revealed to Plaintiff.

## FACTS

10. Ms. Castaneda was hired by Cascata/Caesars on December 4, 2000 as a beverage cart attendant. As a ground-floor employee integral to the opening of Cascata, Ms. Castaneda designed and implemented operational policies and procedures for this position, working 17 consecutive days surrounding the grand opening, after which she adopted a Wednesday through Sunday workweek. In January 2002 in performance review language commending her contributions, Ms. Castaneda was specifically acknowledged as "an integral part [of our operation] and one who make[s] us all look good," and was awarded a wage increase.

11. In or about mid-January, 2002, Ms. Castaneda met with Food and Beverage Manager Greg Poplewko to discuss her ongoing concerns regarding poor maintenance of the beverage cart.

12. Towards the end of July 2002, Ms. Castaneda began experiencing problems with her right leg, and reported to Mr. Poplewko that it was strained and hurting from the heavy workload (11-plus hours a day, 5-7 days weekly, no lunch and no rest breaks in temperatures regularly exceeding 108

1  degrees). She had developed a noticeable limp, and reported she was taking potassium pills due to
2  dehydration, severe leg cramps and heat exhaustion. Ms. Castenada (who personally sought out and
3  referred four qualified individuals for the position), asked Mr. Poplewko again and again when he was
4  going to cover the extra day, allowing her the 4-day work week relief as promised. She suggested a
5  simple left-footed gas pedal devise to give her right leg a break, and asked Mr. Poplewko if someone in
6  Maintenance could install one. Mr. Poplewko denied her request for reasonable accommodation, stating
7  that "it wouldn't look right," and told her, "If you can't handle the job, I can find someone to replace you
8  permanently," or words to that effect.

9      13.    On or about August 9, 2002, Ms. Castaneda went to the Cascata/Caesars
10 administrative office, requesting instructions and completing forms provided by administrative assistant,
11 Sandy Boyer, to apportion Ms. Castenada's accrued vacation pay specifically to cover her health
12 insurance premiums for the month of September (when the Course would be closed for re-seeding). Ms.
13 Boyer immediately commented on her observation that Ms. Castaneda was limping. Ms. Castaneda
14 explained the long days driving the beverage cart were making her leg hurt, and confided to Ms. Boyer
15 of her plans to see a doctor during her time off when the course closes as she feared her condition was
16 worsening.

17     14.    Around that same time period, Ms. Castaneda spoke with Mr. Poplewko and food
18 server, Scott Porter, in the employee break area. Both men teased Ms. Castaneda about her "new
19 occupational disease" which they termed, "cart foot," with the underlying implication she may be filing
20 for workers' compensation. Ms. Castaneda asked Mr. Poplewko again about installing a left-foot gas
21 pedal on the cart to give her right leg some relief. Mr. Poplewko again denied her request.

22     15.    On or about August 14, 2002, Ms. Castaneda reported to work feeling very ill, possibly
23 with the flu but also as a result of root canal surgery she had the day before. In spite of her illness, Ms.
24 Castaneda completed her days' work and told co-worker Tami she was going home ill. Upon arriving
25 home, Mr. Poplewko telephoned her requesting she return to the clubhouse, stating it couldn't wait. He
26 then put himself, the Director of Golf Dave Johnson and Ms. Boyer on a speaker phone and began to
27 question Ms. Castaneda about "someone who's committed improprieties at Cascata."
28 ///

16. In the following days, Ms. Castaneda was questioned several times by Sara Conte in human resources, as well as Mr. Johnson and Mr. Poplewko, regarding her knowledge of a missing juicer.

17. On or about August 23, 2002, Ms. Castaneda received a "Performance Improvement Notice" indicating she was suspended pending an investigation of a charge made against her of not reporting "acts of dishonesty" by a fellow employee. Ms. Castaneda, who had a lengthy, well-documented history of reporting "acts of dishonesty" (over 20 incidences during 1½ years' of employment), wrote a Voluntary Statement that was attached to the Notice and left work.

18. Earlier that same day (on or about August 23, 2002), bartender Joe McClure indicated to Ms. Castaneda that her limp appeared to be worsening and she confided to him her plans to see a doctor the following week and file a Workers' Compensation claim if necessary.

19. Still on suspension, Ms. Castaneda kept her appointment for her right leg with Dr. Eugene Libby on August 28, 2002 regarding her right leg. Afterwards, her son Cole reported Mr. Poplewko telephoned in her absence, that he had told Mr. Poplewko she was "at the doctor's for her leg," and that Mr. Poplewko had left her a message. Ms. Castaneda returned Mr. Poplewko's phone call upon arriving home. Mr. Poplewko informed Ms. Castaneda that Cascata/Caesars was offering her the opportunity to resign. Ms. Castaneda told Mr. Poplewko she intended to obtain legal representation before responding.

20. In a telephone conversation with Ms. Conte on September 10, 2002, Ms. Castaneda requested Workers' Compensation claim forms. After Ms. Conte asked if Ms. Castaneda had legal representation and she responded "No," Ms. Conte informed Ms. Castaneda that her employment was now terminated. Ms. Conte added that Ms. Castenada should not be seeing any doctors because her health insurance also was terminated.

21. From that day until the present, Ms. Castaneda has received virtually no cooperation in her attempts to file a Workers Compensation claim, as the company delayed providing her proper forms, delayed processing the forms, gave her the incorrect contact person for handling the claim, and refused to provide her with a proper referral to an industrial orthopedic surgeon.

///

5

22. In the aftermath, Ms. Castaneda underwent total right hip replacement surgery, with implantation of an artificial titanium hip socket and joint, in December, 2002, which she believes, and the attending orthopedic surgeon corroborates, is a direct result of her worsening work-related condition as described herein. This type of surgery is highly unusual for a woman of Ms. Castaneda's age, who was 41 years old at the time, and otherwise fit and healthy, with no prior casual accidents or history attributable to her condition.

## FIRST CLAIM FOR RELIEF
## (DISABILITY DISCRIMINATION AGAINST DEFENDANTS)

23. Plaintiff repleads and realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 22 above as if fully set forth.

24. At all times relevant hereto, Plaintiff is an individual with a "disability" as that term is defined in the ADA, 42 U.S.C. § 12102. More specifically, because of her medical condition, Plaintiff has a physical impairment that substantially limits one or more of her major life activities (walking); has a record of such impairment; and/or is regarded by Defendant Caesars as having such an impairment.

25. Plaintiff is a "qualified individual with a disability" within the meaning of § 101(8) of the ADA, 42 U.S.C. § 12111(8), in that Plaintiff is an individual with a disability who, with or without a reasonable accommodation, can perform the essential functions of the beverage cart attendant position with Defendant Caesars/Cascata.

26. Despite Plaintiff's request, Caesars/Cascata has refused to make a reasonable accommodation to Plaintiff and instead terminated her when she indicated she was going to file for Workers' Compensation benefits and/or because Caesars/Cascata regarded her as substantially impaired in the major life activity of walking.

27. Defendant knew or should have known of its obligation, pursuant to state and federal statutes, to refrain from engaging in any form of disability discrimination.

28. Caesars/Cascata's denial of and failure to make a reasonable accommodation for Plaintiff's physical disability constitutes discrimination against Plaintiff with respect to the terms, conditions, or privileges of employment. Caesars/Cascata's actions constitute a violation of Section 102(b)(5)(A) of the Americans with Disabilities Act, 42 U.S.C. § 12112(b)(5)(A).

29.  Defendant Caesars/Cascata has failed to undertake any good faith efforts, in consulting with Plaintiff, to identify and make a reasonable accommodation with Plaintiff.

30.  In failing to make a reasonable accommodation to Plaintiff's physical disability, Defendants' actions were intentional and done with malice and wanton and willful disregard for the well-established and federally protected rights of Plaintiff.

31.  As a direct and proximate result of Defendant Caesars/Cascata's discrimination, Plaintiff has been deprived of economic benefits, including, but not limited to, lost wages, loss of fringe benefits, and loss of job opportunities (promotions).

32.  Defendant Caesars/Cascata's failure to make reasonable accommodation to Plaintiff has caused, continues to cause, and will cause the Plaintiff to suffer substantial damages for future pecuniary losses, mental anguish, loss of enjoyment of life, inconvenience, and other nonpecuniary losses.

33.  It has been necessary for Plaintiff to retain the services of an attorney. Pursuant to § 505 of the ADA, 42 U.S.C. § 12205, Plaintiff is entitled to reasonable attorneys' fees, including litigation expenses, and the costs in this action.

## SECOND CLAIM FOR RELIEF
## TORTIOUS DISCHARGE IN VIOLATION OF PUBLIC POLICY

34.  Plaintiff repleads and realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 33 above as if fully set forth.

35.  Defendants, and each of them, wrongfully terminated Plaintiff in violation of public policy wherein employees are entitled to file claims for Workers' Compensation for injuries at work.

36.  Defendants were aware of Plaintiff's injury and/or disability and that she was in the process of filing her claim for Workers' Compensation.

37.  Defendants terminated Plaintiff's employment because of her intent to file a Workers' Compensation claim in an attempt to deprive her of her entitlement to such compensation in violation of public policy of the State of Nevada.

38.  Plaintiff has been seriously harmed, economically and emotionally, by this tortious discharge and is entitled to be fully compensated therefor.

7

39.     Defendants' conduct which violated public policy of the State of Nevada was malicious, oppressive and outrageous and so Plaintiff is entitled to punitive and exemplary damages as well.

40.     It has been necessary for Plaintiff to retain the services of an attorney and she should be compensated therefor.

**THIRD CLAIM FOR RELIEF**
**(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

41.     Plaintiff repleads and realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 40 above as if fully set forth.

42.     The aforementioned actions of Defendants constitute extreme and outrageous conduct and were performed with the intent or reasonable knowledge or reckless disregard that such actions would cause severe emotional harm and distress to Plaintiff, and did in fact cause such harm.

43.     As a result, Plaintiff has suffered damages and she is entitled to recover compensatory and punitive damages therefor.

**FOURTH CLAIM FOR RELIEF**
**(NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)**

44.     Plaintiff repleads and realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 43 above as if fully set forth.

45.     Defendants owed a duty to exercise due care not to subject Plaintiff to foreseeable risk of mental, emotional and/or physical injury, and Defendants knew or reasonably should have known that such acts and/or omissions of Defendants as herein alleged, were likely to result in mental, emotional and/or physical injury to Plaintiff.

46.     Defendants, while engaging in the aforementioned conduct, did negligently inflict extreme mental and emotional distress, indignity, embarrassment, and humiliation upon Plaintiff.

47.     As a direct and proximate result of the Defendants' negligent infliction of such emotional distress, Plaintiff has suffered damages and she is entitled to recover compensatory damages and other damages related thereto.

///

///

8

## PRAYER

WHEREFORE, Plaintiff respectfully prays as follows:

1. A trial by jury on all issues;
2. All employment-related losses subject to proof;
3. All compensatory, special and general damages allowed by law;
4. Punitive damages in an amount found by the jury to be sufficient to punish and/or deter Defendants and all others from engaging in any such conduct in the future and as an example to other employers not to engage in such conduct;
5. Attorneys' fees and costs of suit incurred herein;
6. Prejudgment interest;
7. Injunctive relief as appropriate; and
8. Such other and further relief as the Court shall deem just and proper.

Respectfully submitted this 8th day of January, 2004.

By: _____
KRISTINA S. HOLMAN
Nevada Bar No. 003742
4475 South Pecos Road
Las Vegas, Nevada 89121
Tel: (702) 454-2111
Fax: (702) 454-3333
Attorney for Plaintiff,
TRACEY M. CASTANEDA

C:\Files\DOCS\Castenada\Pleadings\COMPLT.PLD.wpd

9

*EXHIBIT 1*

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☒ FEPA | 021203135L |
| ☐ EEOC | 34BA300652 |

Nevada Equal Rights Commission _____ and EEOC
*State or local Agency, if any*

**NAME** (Indicate Mr., Ms., Mrs.)
Ms. Tracey Castaneda

**HOME TELEPHONE** (Include Area Code)
(702) 293-1338

**STREET ADDRESS** — **CITY, STATE AND ZIP CODE**
636 Valencia Dr., Boulder City, NV 89005

**DATE OF BIRTH**
08/27/19__

**NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME** (If more than one list below.)

**NAME**: CASCATA GOLF COURS (PARK PLACE ENT)
**NUMBER OF EMPLOYEES, MEMBERS**: Cat A (15-100)
**TELEPHONE**: (702) 294-2005

**STREET ADDRESS** — **CITY, STATE AND ZIP CODE**
One Cascata Dr., Boulder City, NV 89006
**COUNTY**: 003

**CAUSE OF DISCRIMINATION BASED ON** (Check appropriate box(es))
☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ OTHER (Specify)

**DATE DISCRIMINATION TOOK PLACE**
EARLIEST: 08/29/2002    LATEST: 08/29/2002
☐ CONTINUING ACTION

**THE PARTICULARS ARE** (If additional space is needed, attach extra sheet(s)):

On December 4, 2000, I was hired as a Beverage Cart Attendant. On July 25, 2002, I was denied a reasonable accommodation to my disability. On August 29, 2002, I was discharged. I filed my complaint with the Nevada Equal Rights Commission on February 7, 2003.

I believe that I was discriminated against because of my disability, as follows:

On July 25, 2002, I requested a reasonable accommodation to my disability. I requested that an extension be made so that I could operate the cart, with less distress. Mr. Greg Poplewko, supervisor, stated that he didn't think it was a good idea, and it would make the cart look funny.

From this date, on or about July 25, 2002 until August 29, 2002, there were increasing comments, regarding my limp. On or about August 8, 2002, Mr. Poplewko asked me about my limping. I informed him that my leg was still hurting. I once again asked about the accommodation. He again refused. For the remainder of August 2002, the limping got worse, and I received numerous comments, from customers, co-workers and family.

On or about August 23, 2002, I was suspended, pending investigation.

** Text is Continued on Attached Sheet(s) **

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

SIGNATURE OF COMPLAINANT

Date: 12-12-03
Charging Party (Signature)

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Month, day and year)

Feb 12 10:44 2003   CP Initials    Chg # 021203135L, Attachment Page

---
Equal Employment Opportunity Commission
Form 5 -- Charge of Discrimination, Additional Text
---

On August or about August 29, 2002, I was terminated. The reason for the termination was that "I failed to report acts of employee dishonesty".

I believe that the reason for the discharge was pretextual, in that the Respondent wanted to eliminated me, from the workforce because of disability.

| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | PERSON FILING CHARGE |
|---|---|
| | Castaneda, Tracey |
| | THIS PERSON (check one) |
| | [X] CLAIMS TO BE AGGRIEVED |
| | [ ] IS FILING ON BEHALF OF ANOTHER |
| Ms Sara Conte<br>Employee Relations Manager<br>Park Place Entertainment<br>3570 Las Vegas Blvd., South<br>Las Vegas, NV 89109 | DATE OF ALLEGED VIOLATION |
| | Earliest: 08/29/2002  Most Recent: 08/29/2002 |
| | PLACE OF ALLEGED VIOLATION |
| | Boulder City, NV |
| | EEOC CHARGE NUMBER |
| | 34BA300652 |
| | FEPA CHARGE NUMBER |
| | 021203135L |

**NOTICE OF CHARGE OF DISCRIMINATION** IN JURISDICTIONS WHERE A FEP AGENCY WILL INITIALLY PROCESS
*(See attached information sheet for additional information)*

YOU ARE HEREBY NOTIFIED THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

- [ ] Title VII of the Civil Rights Act of 1964
- [ ] The Age Discrimination in Employment Act of 1967 (ADEA)
- [X] The Americans with Disabilities Act

HAS BEEN RECEIVED BY

- [ ] The EEOC and sent for initial processing to _____ (FEP Agency)
- [X] The **Nevada Equal Rights Commission** and sent to the EEOC for dual filing purposes.
  *(FEP Agency)*

While EEOC has jurisdiction (upon the expiration of any deferral requirement if this is a Title VII or ADA charge) to investigate this charge, EEOC may refrain from beginning an investigation and await the issuance of the Agency's final findings and orders. These final findings and orders will be given weight by EEOC in making its own determination as to whether or not reasonable cause exists to believe that the allegations made in the charge are true.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency in the course of its proceedings will be considered by the Commission when it reviews the Agency's final findings and orders. In many instances the Commission will take no further action, thereby avoiding the necessity of an investigation by both the Agency and the Commission. This likelihood is increased by your active cooperation with the Agency.

- [ ] As a party to the charge, you may request that EEOC review the final decision and order of the above named Agency. For such a request to be honored, you must notify the Commission in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by the Commission. Regardless of whether the Agency or the Commission processes the charge, the Recordkeeping and Non-Retaliation provisions of Title VII and the ADEA as explained in the "EEOC Rules and Regulations" apply.

For further correspondence on this matter, please use the charge number(s) shown.

- [ ] An Equal Pay Act investigation (29 U.S.C. 206(d)) will be conducted by the Commission concurrently with the Agency's investigation of the charge.
- [ ] Enclosure: Copy of Charge

**BASIS OF DISCRIMINATION**

[ ] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NAT. ORIGIN  [ ] AGE  [X] DISABILITY  [ ] RETALIATION  [ ] OTHER

CIRCUMSTANCES OF ALLEGED VIOLATION

| DATE | TYPED NAME/TITLE OF AUTHORIZED EEOC OFFICIAL | SIGNATURE |
|---|---|---|
| 02/12/2003 | Olophius Perry<br>Director | *[signed]* |